Peter McKenzie, Appellee, v. Mrs. H. B. Whetzel, Appellant, et al.

**SPECIFIC PERFORMANCE:** Inability to Definitely Determine Contract. Specific performance of a contract for the sale of real estate will not be decreed when the record demonstrates that the parties are in dispute as to the terms on which the land was to be sold, and the court, from such record, is unable to *clearly and definitely* determine the truth of the matters in dispute. So held where the undeterminable matter was a dispute as to the payment of interest on drainage taxes.

Faville, J., dissents.

*Appeal from Palo Alto District Court.*—James DeLand, Judge.

April 6, 1921.

Action in equity for the specific performance of an alleged contract to sell real estate. Intervention by a third party, who claimed also to have purchased the land of the defendant, and who asked for the specific performance of his contract. The court found against the intervener, and decreed specific performance of plaintiff's contract. Defendant appeals.—*Reversed.*

*Carl P. Knox,* for appellant.

*William J. Fisher, Davidson & Burt,* and *E. A. & W. H. Morling,* for appellees.

STEVENS, J.—The contract which plaintiff seeks to have specifically performed is found in certain telegrams and letters exchanged between the defendant and one H. M. Helgen, a real estate agent at Emmetsburg, Iowa, who acted for defendant in the sale of the north half of the south half and the south half of the north half of Section 26, Township 94 north, Range 33, located in Palo Alto County, Iowa, containing 320 acres, more or less. The correspondence between them began on March 31st, when defendant wrote Helgen, proposing to list the above-described land with him for sale. Helgen answered the letter of defendant promptly, inclosing two listing blanks, requesting that they be filled out by the defendant, so as to show the description, price, and terms upon which she desired to sell the farm. Further correspondence between them resulted in defendant's finally listing the land, which was incumbered by first and second mortgages aggregating $31,200, and also drainage taxes amounting to $1,700, with Helgen for sale, upon terms which required the purchaser to assume and pay the mortgages, with interest thereon after March 1, 1920, and also the drainage taxes. On May 24th, Helgen wired defendant as follows:

"Have sold your one-half section west of Emmetsburg, as per contract. Check and contract will follow Monday. Wire confirming sale."

Defendant replied to the foregoing telegram on the same day, as follows: "Sale of land satisfactory," but on May 26th, again wired Helgen:

"Check and contract did not come Monday, as per your telegram of Saturday. I hereby cancel my telegram confirming sale."

On the following day, defendant received a letter from Helgen inclosing a check for $500, which was the amount she required the purchaser to pay at the time contract of sale was signed, together with contract showing price as agreed; but defendant insists that the terms therein stated, while substantially in accordance with the listing contract, do not, in some material respects, comply therewith. Defendant immediately returned the check and contract, without her signature, accompanied by a letter calling Helgen's attention to the fact that the contract omitted to provide that the sale was to be subject to the ditch tax,

and that a mortgage was to be executed on the crops for each year, until all payments on the land were made. The price fixed in the contract for the land was $48,000. On May 29th, defendant entered into another contract in writing with one Benjamin F. Phillips, for the sale of the land to him upon substantially the same terms as she claims it was listed with Helgen, but for a consideration of $54,400.

Helgen and Peter McKenzie, appellee, are engaged in the real estate business together at Emmetsburg, and one half of the commission earned by Helgen from the defendant belonged to appellee. The listing contracts which Helgen sent to the defendant to be filled out with the price, description, and terms of sale were not offered in evidence, and both parties rely upon the terms as stated by defendant in her letter of April 15th. In this letter, defendant agreed to pay the interest on the mortgages to March 1, 1920, and the 1919 taxes. But the only reference therein to the drainage tax is a statement of the amount. The contract which was prepared by Helgen and forwarded to the defendant required her to furnish an abstract showing a merchantable title on March 1, 1920, and to pay the taxes and the interest on the two mortgages. The contract did not provide for a mortgage upon the crops to be grown each year upon the farm until full payment should be made for the land, nor did it refer to the drainage tax or interest due March 1, 1920, thereon. The court below held that the terms upon which the land was listed for sale, however, required the defendant to pay the interest upon the drainage taxes to March 1, 1920. Defendant maintains that it was the understanding, at the time she employed Helgen as her agent, that the purchaser was to pay the drainage tax, and that she was not to be liable for any interest thereon. As already stated, drainage taxes to the amount of $1,700 were unpaid. The court below, in its decree granting specific performance, required defendant to pay interest upon the full amount of the drainage taxes to March 1, 1920. This was in accordance with the legal effect of the contract signed by appellee and sent by Helgen to defendant. It is fundamental that courts of equity will not decree the specific performance of contracts the terms of which are not certain, definite, and free

from ambiguity. *Wilson v. Delaney,* 137 Iowa 636; *Caulkins v. Ward,* 127 Iowa 609.

Defendant, as previously stated, returned the contract sent her by Helgen, which had been previously signed by appellee, accompanying same with a letter, in which she noted that the contract contained no provision relative to the drainage taxes. It is her contention that she did not understand the terms upon which she listed the land for sale to require her to pay the interest due March 1, 1920, upon the drainage tax, and that she did not intend or agree to pay the same. No part of the drainage taxes, as between the seller and purchaser, was a lien upon the land; and the court in its decree required the defendant to pay only the interest due thereon to March 1, 1920. Section 1989-a12, Supplement to the Code, 1913. It may be possible to so construe the agreement, as established by the letters, as to require the defendant to pay all interest due upon the incumbrances against the land to March 1, 1920; but, as stated, while the drainage tax was, in fact, a lien, in the sense that the land was security therefor, it was not a lien as between the defendant and appellee. The interest on the drainage tax came due under the statute which provides therefor on deferred payments. In a sense, it was a part of the sum to be paid. Appellee insisted, throughout the trial in the court below, and it is the contention of his counsel in this court, that the terms of the sale as stated in the contract sent to defendant complied strictly with the terms of the listing contract. This depends upon the intention of the parties and the construction to be given the correspondence between defendant and her agent. The reference to interest in defendant's letters quite obviously is to interest on the mortgages. The reference to the drainage tax is in a prior paragraph of the letter. Helgen's only authority to sell the land was that given him by the letters of defendant, listing it with him.

Much stress is laid by counsel for appellee upon the telegram of May 24th, confirming the sale. This telegram was sent in response to the telegram received from Helgen, stating that he had sold the farm as per the terms of the listing contract. The defendant did not, by confirming the sale by wire, bind herself to sign a contract which she had not then seen, and which did not in all respects embody the terms upon which she had listed the

land with her agent for sale. Unless the terms of the contract, which it is claimed defendant confirmed on May 26th by telegram to Helgen, fully complied with the terms upon which he held the land for sale, the defendant had a right, as soon as she discovered that the contract did not fully embody the terms thereof, to reject it. It is immaterial, therefore, whether defendant's telegram of May 27th, canceling her prior confirmation of the sale, was based upon legal grounds or not. The parties do not agree as to the terms upon which the property was listed for sale, and we have no means of determining definitely what the real agreement was between them. We are not prepared to hold that the defendant intended to, or did, bind herself to pay the interest due upon the drainage tax March 1, 1920. Under this state of the record, plaintiff was not entitled to a decree of specific performance.

It is also suggested that defendant's refusal to sign the contract was not in good faith, and that the real reason therefor was that she received an offer from the agent of Phillips of $54,000, an advance of more than $6,000. To what extent defendant was influenced by the opportunity to make a far more advantageous sale, we need not determine. It is true that the record shows that the defendant gave Helgen a note for the commission agreed upon in case of sale, after she refused to sign the contract with appellee; but she at all times repudiated and refused to sign the contract, after she forwarded her telegram of May 27th, canceling her prior approval of the sale. Numerous other questions are discussed by counsel, which it is unnecessary, in view of the conclusion already announced, to discuss.

Phillips intervened, and offered his contract in evidence. The court held that the other contract was prior and binding, and therefore decreed a cancellation of intervener's contract. Intervener has not appealed. It follows that the decree of the court below must be and is—*Reversed.*

Evans, C. J., Weaver, Preston, Arthur and De Graff, JJ., concur.

Faville, J., dissents.